# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|   |   |   |
|---|---|---|
| In re: <br><br> STEPHEN M. DRAPEAU, JR., <br> JENNIFER R. DRAPEAU, <br><br> Debtors | ) ) ) ) ) ) ) ) ) | Chapter 13 <br> Case No. 11-44747 |

## MEMORANDUM OF DECISION

Before the Court is an objection by the Chapter 13 trustee (the "Trustee") to confirmation of the Chapter 13 plan filed by Stephen and Jennifer Drapeau (the "Debtors" or "Stephen" and "Jennifer" individually). Resolution of the objection requires the Court to determine whether funds proposed to be used by the Debtors to make voluntary contributions to their retirement accounts constitute disposable income that must be included in the calculation of payments required under their plan, or whether those contributions are excluded from disposable income by operation of 11 U.S.C. § 541(b)(7).

I.   FACTS AND TRAVEL OF THE CASE

The Debtors filed their voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[1] on November 14, 2011 (the "Petition Date"). In the schedules and statements filed with the petition (the

---

[1] See 11 U.S.C. §§ 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

"Schedules"), Stephen and Jennifer disclosed their interests in two retirement savings plans (the "401(k)" accounts), with balances as of the Petition Date in the amounts of $9,571.40 and $2,401.41, respectively. The Debtors indicated on the Schedules that the accounts were "not property of [the] estate," although they claimed the balance of the accounts as exempt under § 522(d)(12).

On Schedule I, the Debtors reported their respective gross monthly incomes and payroll deductions. From Stephen's gross monthly income of $6,666.70, he deducted payments of $400.01 per month for an "optional retirement plan" and $246.69 per month for a "retirement loan repayment." From Jennifer's gross monthly income of $5,150.75, she deducted $412.05 per month for an "optional retirement plan" and $57.35 per month for a "retirement loan repayment." Also on Schedule I, the Debtors indicated that "[t]he Debtor [sic] anticipates being unable to make 401(k) contributions for the first 6 months of the case due to taking a hardship withdrawal in order to pay attorney's fees." Sched. I-Current Income of Indiv. Debtors, Nov. 14, 2011, ECF No. 1.

For a time prior to the bankruptcy case filing, Jennifer had made average monthly contributions of $412 to her 401(k) account. However, she ceased making contributions in August 2011 after taking a hardship withdrawal from the account. She maintains that, as a result of that withdrawal, she was legally prevented from making 401(k) account contributions for a period of 6 months.[2] Therefore, although Schedule I reflects monthly contributions of $412, Jennifer was not making voluntary contributions to her 401(k) account as of the Petition Date. Postpetition, in February 2012, Jennifer resumed her

---

[2] The Debtors say that this 6-month prohibition on contributions is mandated by 26 C.F.R. § 1.401(k)-1(d)(3)(iv)(E)(2). The Trustee has halfheartedly questioned that assertion. See Mem. in Supp. of Obj. ("Trustee's Mem.") 3 n.5, Aug. 23, 2012, ECF No. 84. However, the disposition of the Trustee's objection does not turn on resolution of that particular dispute.

2

monthly contributions, although in the lesser amount of $396 per month.

Stephen also made prepetition contributions to his 401(k) account, averaging approximately $350 per month. But he also took a prepetition hardship withdrawal in early November 2011 and thus claims to have been prevented from making further contributions for the following 6 months – notwithstanding the indication on Schedule I that he was contributing $400.01 per month to the account. Postpetition, in June 2012, he resumed making contributions, now in the amount of $400.01 per month.[3]

On the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"), the Debtors reported an annual income of $129,447.84, an amount greater than the applicable median family income in Massachusetts. As "above-median" debtors, the Debtors were required to calculate their monthly disposable income using the expenses allowed under § 707(b)(2), see 11 U.S.C. § 1325(b)(3), which are in turn calculated on Form 22C.[4] On Part V, Line 55 of Form 22C, the Debtors claimed "Qualified retirement deductions" in the monthly amount of $365.89.[5]

The Debtors' Chapter 13 plan (the "Plan") contemplates monthly Plan payments of $954 over 5 years. Through the Plan, the Debtors intend to cure over $20,000 in

---

[3] According to the Debtors, Stephen's prepetition monthly contributions of $350 represented 6% of Stephen's prepetition monthly wages; he increased his contribution postpetition after receiving a postpetition increase in monthly income, and the $400.01 figure continues to represent 6% of his monthly income.

[4] Debtors with income below the applicable state median do not calculate their disposable income on Form 22C. Rather, disposable income is determined by deducting from the debtor's income those expenses that are reasonable and necessary for the maintenance or support of the debtor and the debtor's dependents, see 11 U.S.C. § 1325(b)(2), which are generally listed by the debtor on Schedule J.

[5] This amount is much lower than the deductions for 401(k) account contributions claimed on Schedule I, and the Debtors have not provided an explanation for the difference.

3

arrears on secured debts, strip off and avoid certain liens on their residence, and cram down the security interest on an automobile. The Plan also estimates a 23.5% dividend to general unsecured creditors. Objections to the Plan were filed by both a secured lender and the Trustee. All but one of those objections have been previously resolved.

The remaining objection to the Plan was raised by the Trustee in her March 23, 2012 objection to confirmation (the "Objection"). There, she argues that confirmation should be denied because the Debtors' voluntary contributions to their 401(k) accounts represent disposable income that must be paid into the Plan. After a hearing on the Objection and the Debtors' response thereto (the "Response"), the matter was taken under advisement. The parties have filed a stipulation of facts and each has provided the Court with further briefing.

II.   POSITIONS OF THE PARTIES

Relying primarily on Seafort v. Burden (In re Seafort), 669 F.3d 662 (6th Cir. 2012), the Trustee argues that "the Plan may not be confirmed as the post-petition 401(k) contributions constitute projected disposable income pursuant to § 1325(b)(1)(B) and must be committed to the Plan." Trustee's Mem. 3. She maintains that only retirement contributions that are being made as of the Petition Date are excluded from the bankruptcy estate under § 541(b)(7). And because the Debtors were making no retirement contributions as of the Petition Date (regardless of whether or why they were prevented from so doing), those sums must be considered disposable income in the Debtors' Chapter 13 case.[6]

---

[6] It was unclear from the briefing and oral argument whether the Trustee would have the Court adopt the Sixth Circuit Court of Appeals holding in Seafort that postpetition voluntary retirement

4

The Debtors characterize the issue somewhat differently, emphasizing the fact that the Debtors had ceased making voluntary 401(k) contributions as of the Petition Date *only* because they were prevented from doing so by the earlier hardship withdrawals. Their essential argument, however, is that Seafort was wrongly-decided by both the Sixth Circuit and its Bankruptcy Appellate Panel because their construction of § 541(b)(7) was flawed. The Debtors argue that this Court should instead adopt the position that "§ 541(b)(7) unambiguously remove[s] pre- and post-petition retirement plan contributions from the estate and from treatment as disposable income." Debtors' Suppl. Resp. to Conf. Obj. 2, Aug. 24, 2012, ECF No. 85. The Debtors say that they should be permitted to continue making their voluntary 401(k) contributions, and even to increase those contributions, limited only by the good faith requirement of § 1325(b)(3). They maintain that, because the Trustee does not object to the Plan on grounds that it was not proposed good faith – and the Debtors say there is no evidence to support such an objection if raised – the Objection should be overruled.

III.   DISCUSSION

As a prerequisite to confirmation of a Chapter 13 plan, § 1325(b)(1) requires the debtor to devote all "projected disposable income" to make payments under the plan.[7]

---

contributions are *never* permitted because that amount constitutes disposable income, see 669 F.2d at 674 & n.7, or whether the Trustee would have the Court adopt the reasoning of the Bankruptcy Appellate Panel of the Sixth Circuit and hold that such contributions are permissible (and not considered disposable income) only to the extent the contributions were being made as of the petition date, see Burden v. Seafort (In re Seafort), 437 B.R. 204, 210 (B.A.P. 6th Cir. 2010). Regardless, this Memorandum addresses both positions.

[7] Section 1325(b)(1) provides, in relevant part:

While *projected* disposable income is not defined in the Code,

> "[d]isposable income" is now defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. § 1325(b)(2)(A)(i) and (ii) (2006 ed.). . . . The phrase "amounts reasonably necessary to be expended" in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," see § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included, see §§ 707(b)(2), 1325(b)(3)(A).

Hamilton v. Lanning, – U.S. –, 130 S.Ct. 2464, 2469-70, 177 L.Ed.2d 23 (2010).[8]

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 11 Stat. 23 (2005), the question of whether voluntary retirement contributions were reasonably necessary for the debtor's

---

> (b)(1)   If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> . . .
>
> (B)   the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). Technically, this disposable income requirement is applicable only when the Chapter 13 trustee or an unsecured creditor objects to confirmation of a plan. However, the failure to propose a plan that complies with the disposable income requirement from the outset will most certainly draw an objection by the Trustee. See In re Cormier, 478 B.R. 88, 94 n.12 (Bankr. D. Mass. 2012).

[8] In the usual case, this calculation of "disposable income" on Form 22C will end the inquiry – i.e., for above-median debtors, the calculation of disposable income pursuant to the statute will also represent the debtor's "projected" disposable income. Hamilton, 130 S.Ct. at 2475. However, where differences between the Form 22C calculation and actual future income or expenses are "known or virtually certain," the court may account for those differences in determining a debtor's *projected* disposable income. Id. Here, the Debtors' disposable income pursuant to Form 22C is $369.53, but the Schedules indicate a monthly surplus of $954.20, approximately the amount of the proposed Plan payment. Accordingly, while the Form 22C calculation represents the starting point for the proposed disposable income analysis, the Schedules reflect anticipated changes to income or expenses which the Court may take into account.

maintenance or support and whether those funds should be considered part of the debtor's projected disposable income available to make payments under a Chapter 13 plan was not settled. See In re Rolon, 381 B.R. 575, 580 (Bankr. D.P.R. 2007). Some courts adopted a *per se* rule that retirement contributions were never "reasonably necessary," while other courts made the determination on a case-by-case basis. Id. (collecting cases).

The BAPCPA amendments to § 541, however, directly address voluntary retirement contributions, albeit with language that has led to the different interpretations here discussed. Generally, § 541 (now and pre-BAPCPA) defines the contours of the bankruptcy estate. 11 U.S.C. § 541. Subsection (a) details the types of property that comprise the estate, while subsection (b) specifies types of property that are *not* included in the bankruptcy estate. Section 541(b)(7), added by BAPCPA, excludes from the estate "any amount . . . withheld by an employer from the wages of employees for payment as contributions" to a qualified retirement account or "received by an employer from employees for payment as contributions" to a qualified retirement account.[9] 11

---

[9] Specifically, § 541(b)(7)(A) and (B) exclude from the estate:

(7) any amount –

    (A)    withheld by an employer from the wages of employees for payment as contributions –

        (i) to –
            (I)    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986 . . . or

    (B)    received by an employer from employees for payment as contributions –

        (i) to –

7

U.S.C. § 541(b)(7)(A), (B). Both of these subparagraphs go further, however, ending with an oddly-worded "hanging-paragraph," each of which provides: "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7)(A), (B). In a Chapter 13 case, section 1306 incorporates "the property specified in § 541" into the bankruptcy estate, and defines the estate to include both the debtor's postpetition earnings and "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted. . . ." 11 U.S.C. § 1306(a).

Relying on the seemingly plain statement in § 541(b)(7) that "such amount [voluntary retirement contributions] . . . shall not constitute disposable income," a majority of courts have interpreted section § 541(b)(7) as unequivocally removing such contributions from the projected disposable income calculation under § 1325(b)(2).[10] But a minority of courts have held otherwise.

At least two courts have held that only contributions that are actually being made as of the petition date are excluded from the disposable income calculation. See

---

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986 . . . .

11 U.S.C. § 541(b)(7)(A), (B). Because the parties have not stated otherwise, the Court assumes that the 401(k) accounts are "qualified" retirement accounts under these subsections.

[10] See, e.g., In re Paliev, 2012 WL 3564031 (Bankr. E.D. Va. Aug. 17, 2012); In re Egan, 458 B.R. 836 (Bankr. E.D. Pa. 2011); In re Gibson, 2009 WL 2868445, *2 (Bankr. D. Idaho Aug. 31, 2009); In re Padilla, 2009 WL 2898837, *2 (Bankr. D.P.R. June 23, 2009); In re Seafort, Nos. 08-3380, 08-22417, 2009 WL 1767627, *2 (Bankr. E.D. Ky. June 22, 2009), overruled by Seafort, 669 F.3d 662; In re Mati, 390 B.R. 11, 15 (Bankr. D. Mass. 2008); In re Garrett, 2008 WL 6049236, *1 (Bankr. M.D. Fla. Jan. 18, 2008); In re Shelton, 370 B.R. 861, 866 (Bankr. N.D. Ga. 2007); In re Puetz, 370 B.R. 386, 392 (Bankr. D. Kan. 2007); In re Devilliers, 358 B.R. 849, 864 (Bankr. E.D. La. 2007); In re Njuguna, 357 B.R. 689 (Bankr. D.N.H. 2006); Baxter v. Johnson (In re Johnson), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

8

Burden v. Seafort (In re Seafort), 437 B.R. 204 (B.A.P. 6th Cir. 2010), overruled by Seafort v. Burden (In re Seafort), 669 F.3d 662 (6th Cir. 2012); In re Noll, No. 10-35209-svk, 2010 WL 5336916, *2 (Bankr. E.D. Wis. Dec. 21, 2010).  Thus, under this line of reasoning, debtors cannot begin making voluntary retirement contributions postpetition if they were not contributing prepetition, nor can debtors increase the amount of their contributions postpetition.  Still other courts, including the Sixth Circuit Court of Appeals in Seafort, 669 F.3d 662, have held that *no* postpetition voluntary contributions to a retirement account are permissible, regardless of whether they were being made prepetition or on the petition date, as those funds are always considered disposable income that must be paid into a chapter 13 plan under § 1325.  See Id.; In re McCullers, 451 B.R. 498, 503 (Bankr. N.D. Cal. 2011); In re Prigge, 441 B.R. 667, 677 & n.5 (Bankr. D. Mont. 2010).

Both minority approaches rely in large part on the same analysis.  Both begin with reading into § 541 an interplay between § 541(a)(1) and § 541(b) that limits § 541(b)'s exclusions to property extant as of the petition date.  As one court has explained this reasoning:

> With minor exceptions not relevant here, section 541(a)(1) defines as property of the estate only property that the debtor holds on the petition date: section 541(a)(1) provides that property of the estate includes the "legal or equitable interest of the debtor in property *as of the commencement of the case*" (emphasis added), and section 541(a)(6) states that section 541 does not bring into the estate "earnings from services performed by an individual debtor after the commencement of the case."  Section 541(b) creates exceptions to 541(a).  This structure suggests that section 541(b)(7) excludes from property of the estate only property that would otherwise be included in the estate under section 541(a).  Thus, the most natural reading of section 541(b)(7) is that it excludes from property of the estate only those contributions made before the petition date.

McCullers, 451 B.R. at 503.[11]  In Seafort, the Sixth Circuit further emphasized the placement of the retirement contribution exclusion "outside the confines of Chapter 13" in § 541, which "fixes property of the estate as of the date of filing, while § 1306 adds to the 'property of the estate' property interests which arise post-petition." Id. at 666-67.

The minority approaches find significance in the absence of any reference to retirement contributions in § 1306.  See, e.g. Parks, 475 B.R. at 709; Noll, 2010 WL 5336916 at *2, Seafort, 437 B.R. at 209.  And they also contrast the placement of the voluntary contribution exclusion in § 541(b)(7) with the placement of the 401(k) *loan* repayment exclusion in § 1322(f),[12] concluding that the absence of an analogous chapter 13 provision related to 401(k) contributions "was deliberate." Seafort 669 F.3d at 672; see also Parks, 475 B.R. at 708; McCullers, 451 B.R. at 504; Prigge, 441 B.R. at 677.  These juxtapositions, according to the minority, compel the inference that "Congress did not intend to treat 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from 'disposable income' within Chapter 13

---

[11] See also Seafort, 669 F.3d at 673 (in light of "§ 541(b)(7)'s express relationship with § 541(a)(1) . . . only those interests in property set forth in § 541(b)(7)(A) in existence *as of the commencement* of a debtor's case are excluded from property of the estate"); Parks v. Drummond (In re Parks), 475 B.R. 703 (9th Cir. B.A.P. 2012) ("by reading § 541(a)(1) and § 541(b)(7)(A) together, the most reasonable interpretation of § 541(b)(7)(A) is that it excludes from property of the estate only those 401(k) contributions made before the petition date"); Seafort, 437 B.R. at 209 ("Read together, § 541(a) and (b) establish a fixed point in time at which parties and the bankruptcy court can evaluate what assets are included or excluded from property of the estate.  Section 541(a) clearly establishes this point as the commencement of the case.  Therefore, only 401(k) contributions which are being made at the commencement of the case are excluded from property of the estate under § 541(b)(7).").

[12] Section 1322(f) provides:

> A plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute "disposable income" under § 1325.

11 U.S.C. § 1322(f).

10

itself." Seafort, 669 F.3d at 672.

This Court agrees with the Debtors, however, that the minority's interpretation of § 541(a)(1) as limiting the exclusions in § 541(b) misconstrues § 541 as a whole. While § 541(a)(1) does provide that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate, 11 U.S.C. § 541(a)(1), the words "as of the commencement of the case" create a time limitation for that subsection only. They do not limit the remaining provisions of § 541. As the Supreme Court has stated with regard to § 541, "[a]lthough [§ 541(a)(1)] could be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, we view [the statute] as a definition of what is *included in the estate, rather than as a limitation*." United States v. Whiting Pools, Inc., 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (emphasis supplied); see also Ragosa v. Canzano (In re Colarusso), 295 B.R. 166, 172 (B.A.P. 1st Cir. 2003).

While the debtor's property interests at the time a case is filed often comprise the bulk of the bankruptcy estate's property, the additional provisions of subsection (a), as well as the provisions of § 1306, add *postpetition* property to the estate. See §§ 541(a)(3)-(6); 1306(a). Thus, it cannot be said that the entirety of § 541, including the exceptions specified by § 541(b), is limited in scope to the date of case commencement. Rather, just as § 541(a) defines the scope of both prepetition and postpetition property of the estate, the limitations found in subsection (b) relate to both prepetition and postpetition property of the estate.

Section 1306 incorporates *all* of § 541 into the definition of estate property in the Chapter 13 case, including those exceptions detailed in subsection (b). And because

11

§ 541(b)(7) expressly excludes voluntary retirement contributions from the bankruptcy estate, there is no need for § 1306 to contain a duplicative provision excepting such contributions.  The exception becomes applicable with the wholesale incorporation of § 541.  As one court has explained:

> The preamble of § 1306 and subsection (a)(1) both make reference to the *entirety* of § 541, not just § 541(a)(1).  The text provides no basis to read the references in § 1306 to § 541 to incorporate only the inclusions provided under § 541(a) and not the exclusions provided under § 541(b).  Moreover, § 1306(a)(2) does not provide, in and of itself, a textual basis to infer that § 541(b)'s exclusions, let alone § 541(b)(7) specifically, would not be applicable post-petition.
> . . .
>
> Not only does this Court find no textual basis to hold that § 1306 does not incorporate on a prospective basis the exclusions provided by § 541(b), this Court finds this reading to be at odds with the nature of chapter 13 cases.  Unlike cases commenced under chapters 7 and 11, the petition date in chapter 13 proceedings is not determinative of the scope of a chapter 13 estate.  Section 1306(a)(1) incorporates into a chapter 13 estate "all property of the kind specified in [§ 541] that the debtor acquires *after the commencement of the case but before the case is closed, dismissed, or converted . . .*"  11 U.S.C. § 1306(a)(1) (emphasis added).  This language makes clear that property of the type specified by § 541 that is acquired post-petition by a chapter 13 debtor, and not just post-petition income, becomes part of that debtor's chapter 13 estate.

Egan, 458 B.R. at 845, 846.

To be sure, the drafting of the "hanging paragraph," is awkward, and courts have endeavored to understand and give meaning to the words "except that" which precede the statement that the contributions are not disposable income.  But the awkwardness of the language does not warrant a strained reading of the otherwise clear pronouncement that voluntary retirement contributions are excluded from the § 1325(b) disposable income calculation.  To the extent that the inclusion of the phrase "except that" is deemed surplusage, in the context of the otherwise plain meaning of the statute

12

and absent any other indication to the contrary, this Court should follow the Supreme Court's admonition in Lamie v. U.S. Trustee that a statute's mere "awkwardness" must not be allowed to alter its plain meaning:

> Where there are two ways to read the text – either [with] surplusage, in which case the text is plain; or [without surplusage] . . . in which case the text is ambiguous – applying the rule against surplusage is, absent other indications, inappropriate. We should prefer the plain meaning since that approach respects the words of Congress.

540 U.S. 526, 535, 536 (2004).

The Court is also not persuaded by the argument that the plain meaning of § 541(b)(7)(A) can be derived by examining the treatment of 401(k) *loan* repayments under § 1322(f) in juxtaposition with the absence of a similar Chapter *13* provision addressing voluntary 401(k) contributions. Under § 103(a), the provisions of Chapter 5 (here § 541) apply in all cases filed under Chapter 13. Therefore, § 541(b)(7)(A) is as much relevant to Chapter 13 as is § 1322(f).

Furthermore, this Court cannot agree with the reasoning in Seafort that Congress had not considered voluntary contributions to be "reasonable and necessary expense[s]" because they were not listed in § 707(b)(2)(A) & (B) and were not provided for on Form 22C. Id. First, while § 707(b)(2)(A) & (B) dictate an above-median debtor's allowed expenses in determining disposable income, the calculation must also take into account other Code provisions that either exclude certain income from consideration or allow the deduction of other payments, such as voluntary retirement contributions. And as the Shelton court noted, there was no reason to provide a further deduction in either § 1325(b)(2) or § 707(b)(2) for voluntary retirement contributions because those amounts "are not *subtracted* from current monthly income . . . they simply 'do not

constitute disposable income' under § 1325(b) in the first place. 11 U.S.C. § 541(b)(7)." Shelton, 370 B.R. at 865.[13]

And second, the Seafort court was incorrect in its statement that Form 22C does not contain a line item accounting for the voluntary retirement contribution adjustment. While the court was correct in noting that Line 31 of the form allows consideration only of *involuntary* deductions from wages and not voluntary retirement contributions,[14] the court's attention was apparently not drawn to Line 55 of Form 22C, which was specifically included to account for the "deduction of contributions by the debtor to certain retirement plans, listed in § 541(b)(7) . . ."[15] Official Forms 22A, 22B, & 22C-Cumulative Committee Note 11, available at <http://www.uscourts.gov/uscourts/Rules AndPolicies/rules/BK%20Forms%20CN%20reformatted%202010/B_022A-22B-22C_

---

[13] For this reason, it is immaterial for purposes of § 541(b)(7) whether a debtor is above or below median, as the statute excepts voluntary retirement contributions from the disposable income calculation in either case, obviating the need to determine whether those contributions are "reasonably necessary" for the debtor's maintenance or support. See Garrett, 2008 WL 6049236 at *1 ("401(k) contributions . . . are not disposable income without regard to whether a debtor is below or above the median income"); Devilliers, 358 B.R. at 864 ("Because the exclusion for qualified retirement contributions is not limited to above the means test debtors, but found as a general proposition under § 541, the Court can find no distinction in the availability of the deduction between above or below the means test debtors.").

[14] The instructions for completing Line 31 of Form 22C state:

> **Other Necessary Expenses**: **involuntary deductions for employment**. Enter the total average monthly deductions that are required for your employment, such as mandatory retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as voluntary 401(k) contributions.**

[15] Line 55 of Form 22C addresses itself to both § 541(b)(7)'s exclusion of voluntary 401(k) contributions and § 1322(f)'s exclusion of 401(k) loan payments from the disposable income calculation. The instructions for Line 55 read:

> **Qualified retirement deductions**. Enter the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all required payments of loans from retirement plans, as specified in § 362(B)(19).

CN_cum_1210.pdf> (last visited January 8, 2013).

Because the plain language of § 541(b)(7) is clear, reliance on legislative history or the purpose of the BAPCPA amendments is unnecessary to resolve the issue raised in this case. But the Court pauses to note that, although much of BAPCPA was rooted in the policy of "ensur[ing] that debtors pay creditors the maximum they can afford," H.R. Rep. No. 109-31(I), 2005 WL 832198, at *2 (Apr. 8, 2005), this policy is counterbalanced by Congress's acknowledgment that portions of BAPCPA were also intended to create new protections for retirement savings. Id. at *35, 63-64, 84; see also Egan, 458 B.R. at 849 (BAPCPA amendments evidence Congress's "decision to depart from the standard policy of ensuring maximum repayment to unsecured creditors" and emphasize Congress's "deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings") (quoting In re Williams, 290 B.R. 83, 85 (Bankr. E.D. Pa. 2003)); Mati, 390 B.R. at 17 ("Congress has implemented a policy of protecting and encouraging retirement savings"); Shelton, 370 B.R. at 865-66 ("Congressional intent on this point is sufficiently plain and is a matter of policy; as such, it does not lead to an absurd result. The goal to expand retirement savings is clear and the result is reasonable.").

IV.   CONCLUSION

In sum, the Court holds that § 541(b)(7) excludes postpetition voluntary contributions to the retirement plans and annuities specified therein from the scope of disposable income under § 1325(b)(2), so long as made in good faith.[16] That good faith

---

[16] See Egan, 458 B.R. at 850-51 (the court may consider facts involving retirement contributions in determining a debtor's good faith under § 1325(a)(3)); Mati, 390 B.R. at 17-18 (same);

determination is case-specific and will often turn on whether a debtor has made contributions in similar amounts over an extended period of time. But where, as here, there is a history of similar prepetition contributions, temporarily interrupted on account of a circumstance beyond a debtor's control (e.g., a limited period in which a debtor could not contribute on account of a hardship withdrawal), it appears to this Court that any good faith obstacle has been overcome. Accordingly, the Trustee's Objection to confirmation of the Debtors' Plan as it relates to the failure to include the Debtors' retirement contributions in their projected disposable income will be OVERRULED.

However, the Court will schedule a status conference in the case in order to determine whether any further obstacle remains to confirmation, including, without limitation: (1) whether the Debtors have accounted for the amounts equal to the retirement contributions listed on Schedule J, but which they say were not made for all of the postpetition period and (2) the allegation made by the Trustee in her supplemental memorandum that Stephen has failed to disclose or turn over certain postpetition bonuses and commissions in the approximate amount of $6,926.

An order in conformity with this memorandum shall issue forthwith.

DATED: January 8, 2013                By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

---

Shelton, 370 B.R. at 866-68 (same); Gibson, 2009 WL 2868445, *3 (same); In re Jones, 2008 WL 4447041, *4 (Bankr. D. Kan. Sept. 26, 2008) (same).